**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DONALD GLENN, JR.,**
        **Petitioner,**

**vs.**                                        **Case No. 3:08cv479/MCR/MD**

**WALTER A. McNEIL,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a response requesting dismissal of the petition as time barred, or in the alternative, denial of the petition on the merits. (Doc. 11).  Relevant portions of the state court record have been provided.  (*Id.*). Petitioner has filed a reply contending that the petition is timely, and that he is entitled to relief on his claim (Doc. 15).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition, although timely, should be denied.

## PROCEDURAL HISTORY

The procedural background of this case is established by the state court record.  Petitioner was charged in the Circuit Court of Santa Rosa County Florida, Case No. 04-0240, with three counts of felony DUI with serious bodily injury, one count of felony driving while license revoked, and three counts of misdemeanor DUI with damage to property or person without serious injury.  (Doc. 11, Ex. B, pp. 165-

67).[1]  On August 11, 2005, petitioner entered a plea of nolo contendere to all of the charges.  (Ex. C).  He was adjudicated guilty on September 30, 2005, and sentenced to five (5) years imprisonment on one count of DUI with serious bodily injury; two consecutive terms of five (5) years of imprisonment on the remaining two counts of DUI with serious bodily injury, to run consecutively to the first count; a term of five (5) years of imprisonment on the driving while license revoked count, to run concurrently with the sentence on the first DUI count; and 364 days of imprisonment in the county jail on the three misdemeanor counts, to run concurrently with the other counts (Ex. B, pp. 168-74).  Petitioner did not directly appeal the judgment. (Doc. 1, p. 2; Doc. 11, Ex. A).

On July 13, 2006, petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. B, pp. 1-21).[2]  On August 23, 2006, the trial court dismissed the motion without prejudice on the ground that the motion was not verified, as required by Florida Statutes § 92.525(4)(c), in that petitioner failed to sign the motion.  (*Id.*, p. 50).  The court, however, granted petitioner leave to amend to properly verify the motion under oath.

On or about September 13, 2006, petitioner filed another Rule 3.850 motion (Ex. B, pp. 51-71).  On September 15, 2006, the trial court entered an "Order to Show Cause" dismissing the motion without prejudice for failure to comply with the verification and oath requirement because petitioner did not sign the motion itself, even though he signed the accompanying memorandum of law.  (*Id.*, pp. 100-01). The court again granted petitioner leave to amend, providing him ten (10) days in which to properly verify his motion.  Petitioner was warned that failure to do so would result in dismissal of the motion with prejudice.  (*Id.*).

On September 25, 2006, petitioner filed another Rule 3.850 motion, which complied with the verification and oath requirements of Florida law.  (Ex. B, pp. 102-22).  On December 20, 2006, the trial court summarily denied the motion.  (*Id.,* pp. 153-58).  The Florida First District Court of Appeal ("First DCA") granted petitioner's request for a belated appeal of the order, providing that "[u]pon issuance of mandate

---

[1] Hereafter, all references to exhibits will be to those provided at doc. 11, unless otherwise noted.

[2] Although the motion was neither signed nor dated, and the state court indicated that the motion was filed on August 21, 2006, the first page of the motion contains a Department of Corrections stamp indicating that the motion was provided to prison officials for mailing on July 13, 2006.  (Ex. B, p. 1).

in this cause, a copy of this opinion will be provided to the clerk of the circuit court, with directions that it be treated as a notice of appeal. . . ." *Glenn v. State*, 968 So. 2d 68 (Fla. 1st DCA 2007) (copy at Ex. B, pp. 240, 243). The mandate issued December 4, 2007. (Ex. B, p. 242). The appellate court subsequently affirmed the lower court decision per curiam without written opinion on June 3, 2008, with the mandate issuing August 1, 2008. *Glenn v. State*, 985 So. 2d 1095 (Fla. 1st DCA 2008) (Table) (copy at Exs. F, G).

Petitioner filed the instant federal habeas petition on October 15, 2008. (Doc. 1).

## DISCUSSION

### Timeliness

Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).

In the instant case, petitioner has not asserted that a government-created impediment to his filing existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before

his conviction became final. Thus, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final. *See* 28 U.S.C. § 2244(d)(1).

Because petitioner did not appeal his judgment of conviction, it became final for purposes of § 2244(d)(1) on October 30, 2005, which is thirty days after rendition of the September 30, 2005 judgment. *See* FLA. R. APP. P. 9.110(b), *amended by* Fla. Ct. Order 02 (2009); *Walk v. State*, 707 So.2d 933 (Fla. Dist. Ct. App. 1998) (holding that if "a conviction and sentence are not appealed, they become final 30 days after they are entered."); *Gust v. State*, 535 So.2d 642 (Fla. Dist. Ct. App. 1988) (holding that if defendant does not appeal the conviction or sentence, judgment of conviction and sentence become final when the 30-day period for filing appeal expires). Thus, petitioner had until October 30, 2006 in which to file his federal habeas petition.

Petitioner did not file his federal petition on or before October 30, 2006; however, he may be entitled to review of his petition if the limitations period was tolled pursuant to statutory tolling principles. Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The United States Supreme Court has held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000). State laws and rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (citations omitted).

The Eleventh Circuit has held that a state petition that does not comply with a state rule requiring a written oath is not "properly filed." *Hurley v. Moore*, 233 F.3d 1295 (11th Cir. 2000). Although *Hurley* preceded *Artuz v. Bennett*, its validity was not affected by it. *See Drew v. Dep't of Corrections*, 297 F.3d 1278, 1285 (11th Cir. 2002). Here, petitioner's July 13, 2006 and September 13, 2006 motions for postconviction relief failed to comply with Florida's oath requirement. Therefore, they were not "properly filed." *Hurley, supra*. However, the question arises whether petitioner's September 25, 2006 motion, which corrected the oath deficiency and was "properly

filed," relates back to the date of filing of the original motion. Respondent does not address this issue, and *Hurley* did not consider the question.[3]

Since *Hurley*, the Florida Supreme Court has held that when a lower court strikes a motion for postconviction relief because it fails to comply with statutory filing requirements, it must do so with leave to amend to cure the defects within a reasonable time (ten to thirty days). *Bryant v. State*, 901 So. 2d 810, 818-19 (Fla. 2005). If the trial court strikes the motion without granting leave to amend, it abuses its discretion. *Id.*, pp. 817-18. The *Bryant* court further held that an amended motion which does not change the original claims relates back to the date of the original motion. *Bryant v. State*, 901 So. 2d at 818, 830. *Bryant* was decided well before the petitioner in this case filed his original Rule 3.850 motion on July 13, 2006.

The state court, in its August 23, 2006 dismissal order, granted leave to amend without specifying a time frame. Nonetheless, petitioner filed his second motion "within a reasonable time," *Bryant*, at 818-19, specifically, within twenty days of the date of the order. When petitioner's second motion was found facially deficient and he was again granted leave to amend, he filed his third motion within the ten-day deadline imposed by the court's September 15, 2006 Order to Show Cause. All three motions were identical in all respects, except that in petitioner's third motion he corrected his original error by signing the motion under oath. Under Florida law, the third motion related back to the date of the original motion, July 13, 2006. FLA. R. CIV. P. 1.190(c) ("When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading."); *Bryant*, at 818 ("Had the circuit court stricken the [Rule 3.851] motion with leave to amend, the amended motion Bryant filed in March 2003 would have been timely because it would have related back to the original filing," quoting Rule 1.190(c)); *Schwenn v. State*, 958 So.2d 531, 532 (Fla. 4th DCA 2007) (explaining that an amended Rule 3.850 motion would relate back, citing *Bryant*). *See also Mederos v. United States*, 218 F.3d 1252, 1253–54 (11th Cir. 2000) (district court erred by not finding that second § 2255 motion related back to date of original § 2255 motion

---

[3]In *Hurley*, the petitioner did not immediately correct the oath omission, but instead sought rehearing and then appealed the court's ruling before eventually filing a properly sworn postconviction relief motion some months later. *Id.* at 1297. *Hurley* did not consider the question of whether the petitioner's amendment to the original motion for postconviction relief related back to the original filing so as to trigger the tolling provisions of § 2244.

where second motion was identical to first except for addition of signature under penalty of perjury); *see also, e.g., Patrick v. McDonough*, No. 4:06cv543/SPM/WCS, 2007 WL 3231740, at *10-*11 (N.D. Fla. Oct. 29, 2007) (finding petitioner's amended motion for belated appeal related back to the filing of his original motion); *Knight v. Florida Dep't of Corrections*, No. 1:07cv228/MMP/AK, 2008 WL 3411752 (N.D. Fla. Aug. 6, 2008) (same); FED. R. CIV. P. 15(c) (providing relation back much the same as the Florida rule).

      Having determined that petitioner's first postconviction application was filed on July 13, 2006, by that time 255 days of the federal limitations period had run. Respondent concedes that the postconviction proceeding was pending until August 1, 2008, the date of the First DCA's mandate affirming the trial court's denial of relief. (Doc. 11, p. 7; Doc. 15, p. 3).[4]  Given this concession, petitioner's federal habeas petition, which was filed seventy-four (74) days later on October 15, 2008, would be considered timely.

<u>Merits</u>

      Respondent further asserts that the petition is without merit and should be denied.  The petition raises one ground for relief:  that counsel was ineffective in connection with a pretrial motion to suppress evidence of petitioner's intoxication obtained from a compelled blood draw.  Specifically, petitioner faults counsel for "fail[ing] to sufficiently argue and bring forth facts as a matter of law concerning the required 'probable cause' in which to effectuate a proper blood withdrawal pursuant

---

[4]Respondent concedes petitioner was entitled to statutory tolling for the 147 days between January 19, 2007 (the date the 30-day deadline to appeal the December 20, 2006 denial order expired) and June 16, 2007 (the date petitioner states he filed his petition for belated appeal of that order).  In light of respondent's concession, the court does not address the propriety of considering petitioner's Rule 3.850 motion "pending" during those 147 days.  *But see Cramer v. Secretary, Dep't of Corrections*, 461 F.3d 1380, 1383 (11th Cir. 2006) (holding that if a petitioner does <u>not</u> file a timely notice of appeal of an order denying postconviction relief, that application remains "pending" until the time to seek appellate review expires); *McMillan v. Secretary for Dep't. of Corrections*, 257 Fed. Appx. 249, 252 (11th Cir. Dec. 6, 2007) (per curiam) (unpublished opinion) (holding that habeas petitioner was not entitled to statutory tolling for the 95-day period between the date the Florida trial court's denial of his Rule 3.850 motion became final and the date petitioner filed a petition for belated appeal of that 3.850 denial, even though the Florida appellate court ultimately granted the petition for belated appeal).

      Similarly, given respondent's concession that the motion for belated appeal tolled the AEDPA limitations period even though it was filed after the limitations period expired on or about May 9, 2007, the court declines to address the propriety of considering that motion a tolling application under section 2244(d)(2). *But see Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) (holding that a motion seeking a belated appeal of an order denying postconviction relief, which is filed after expiration of the federal habeas limitations period, does not relate back so as to toll the idle period between expiration of the time to appeal and grant of a late appeal).

to F.S. 316.1932(1)(c)." (Doc. 1, p. 4). Respondent concedes petitioner exhausted this claim by presenting it to the state courts in the Rule 3.850 proceeding. (Doc. 13, p. 10).

### A.    Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2008).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> **Federal law, as determined by the Supreme Court of the United States."**
> **Under the "contrary to" clause, a federal habeas court may grant the**
> **writ if the state court arrives at a conclusion opposite to that reached**
> **by this court on a question of law or if the state court decides a case**
> **differently than this Court has on a set of materially indistinguishable**
> **facts. Under the "unreasonable application" clause, a federal habeas**
> **court may grant the writ if the state court identifies the correct**
> **governing legal principle from this Court's decisions but unreasonably**
> **applies that principle to the facts of the prisoner's case.**

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine

whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 496 F.3d 1216, 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones, supra* (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

**B.      Clearly Established Federal Law Governing Petitioner's Claim**

In determining the validity of  a plea to a criminal charge, a nolo contendere plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, at 748. Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S.Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S.Ct. 1441, 1448-49, 25 L.Ed.2d 763 (1970); *Sierra v. Government of Canal Zone*, 546 F.2d 77, 81 (5th Cir. 1977).

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314 (citing *Strickland*, 104 S.Ct. at 2065). As applied to the plea situation, the first prong of *Strickland* remains the same. *Hill*, 474 U.S. at 58. However, counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial. In the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.* The Supreme Court has warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. at 769–70, 90 S. Ct. at 1448.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. As the Court further explained in *Hill*:

> In the context of guilty pleas, . . . [t]he second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

      C.     Federal Review of State Court Decision

          i.     Background

On December 12, 2003 petitioner, while intoxicated caused a traffic crash with serious bodily injuries. (Ex. B, Amended Information, pp. 165-66; Ex. C, Tr. of Plea Colloquy). Three vehicles were involved, and four individuals (including petitioner) were seriously injured. Petitioner was taken to the hospital and, pursuant to section 316.1933(1), Florida Statutes (2004), a compelled blood draw was conducted. The results showed a blood alcohol reading of .137 and .138. (Ex. B, pp. 160-61; Ex. B, Mot. to Suppress, p. 233). Petitioner was charged with seven counts of criminal conduct, as outlined above. Six counts were DUI related. (Ex. B, Amended Information, pp. 165-66).

Defense counsel file a pretrial motion to suppress the blood test results obtained from the compelled blood draw. In the motion, defense counsel detailed the accident findings and argued that the blood test results should be suppressed because the law enforcement officer lacked probable cause to believe petitioner was under the influence or impaired by alcohol or drugs at the time of the accident. (Ex. B, Mot. to Suppress, pp. 232-38). In support of the motion, defense counsel cited to

*State v. Cesaretti*, 632 So.2d 1105 (Fla. 4th DCA 1995) (holding that in order for an officer to order blood to be drawn he must have probable cause to believe that the driver was under the influence of alcohol or drugs, and that the driver had caused an accident resulting in serious bodily injury); *Williams v. State*, 731 So. 2d 48 (Fla. 2d DCA 1999) (defining probable cause as "a fluid concept that deals in probabilities, which include common sense conclusions by law enforcement officers); *Gerlitz v. State*, 725 So. 2d 393 (Fla. 4th DCA 1998) (holding that to establish probable cause, an officer may rely on information provided at the scene by other law enforcement officers and by emergency personnel); *Jackson v. State*, 456 So. 2d 916 (Fla. 1st DCA 1984) (determining that "under the influence" means something more than just having consumed an alcoholic beverage); and *State v. Brown*, 725 So. 2d 441 (Fla. 5th DCA 1999) (holding that "under the influence" means the driver's normal faculties were "impaired,' not simply that the driver had consumed alcohol).

The motion was heard on February 7, 2005. (Ex. B, Hr'g Tr., pp. 175-212). At the suppression hearing the State called Cpl. Daniel Maddox who testified that he was dispatched to the scene of the traffic crash. (Ex. B, p. 180). Three vehicles were involved in the crash. There were multiple injuries to at least nine individuals, some of which were serious. Petitioner, who was among those sustaining serious injuries, was transported to West Florida Hospital by Life Flight. Cpl. Maddox interviewed a witness at the scene and performed a crash scene analysis. He determined that petitioner was driving the vehicle which caused the accident. Specifically, petitioner had driven off the road and over corrected, skidding across the highway and colliding head on with another vehicle. Cpl. Maddox also observed a beer can in the middle of the road. Based on his observations, including the location of the vehicles, the pattern of the accident and the damage to the vehicles, he concluded that it likely came from petitioner's vehicle, and that it was unlikely that it came from either of the other vehicles. Maddox directed that Trooper Larry Wright be dispatched to the hospital where petitioner had been transported, and that Wright obtain a blood withdrawal from petitioner. Cpl. Maddox related to Trooper Wright his observations of the scene and the determinations he made. (*Id.*, pp. 181-87).

On cross-examination, defense counsel elicited testimony from Cpl. Maddox that the beer can was unopened. (*Id.*, p. 189). Counsel also questioned Cpl. Maddox as to why he believed it unlikely that the beer can came from one of the other two

vehicles. Cpl. Maddox responded that "[t]here were no indicators of uses of alcohol" by anyone in those vehicles. (*Id.*). Cpl. Maddox later clarified for the court that he did not smell alcohol in petitioner's vehicle. (*Id.*, p. 199). His request for a blood withdrawal was based on the beer can and the driving pattern of the accident. (*Id.*).

The State also called Trooper Wright who testified that he proceeded to the hospital at the request of dispatch to conduct a blood draw on petitioner. (*Id.*, p. 192). He then spoke with Cpl. Maddox. Trooper Wright attempted to speak to petitioner, but petitioner was unconscious. (*Id.*, pp. 193-94). When Wright leaned over to talk to petitioner he smelled the odor of an alcoholic beverage emanating from him. (*Id.*, p. 194). Trooper Wright asked a nurse to withdraw a blood sample. (*Id.*, p. 195).

On cross-examination, Trooper Wright clarified that the blood draw was based on the information and determinations provided by Cpl. Maddox, as well as the odor of an alcoholic beverage he himself detected on petitioner. (*Id.*, pp. 196-97). He testified, however, that even without the smell of alcohol, he would have coordinated the blood draw based on the request received from Cpl. Maddox. (*Id.*).

At the close of evidence, defense counsel argued that the only indication that alcohol had been consumed by petitioner at the time Cpl. Maddox conducted his investigation was the existence of an unopened beer can in the middle of the road, and that that was insufficient to support a finding of probable cause to conduct a compelled blood draw. Counsel further argued that Trooper Wright's testimony that he smelled alcohol emanating from petitioner did not provide probable cause, because Wright did not testify it was coming from petitioner's breath, and in any event was information obtained after Cpl. Maddox ordered the blood draw and thus could not be imputed to Maddox.

In response, the State argued that the knowledge Cpl. Maddox obtained at the scene (that petitioner was driving the vehicle that caused the crash, that the crash caused serious bodily injuries, that a beer can was lying near petitioner's vehicle) provided sufficient probable cause to compel a blood draw. The State further argued that Trooper Wright's knowledge of that information (pursuant to the fellow officer rule) and his detection of an odor of an alcoholic beverage on petitioner, provided Trooper Wright with sufficient probable cause to compel the blood draw. The State cited to four cases, *State v. Cesaretti, supra*, (holding that officer had

probable cause to order compelled blood draw under Fla. Stat. § 316.1933, where officer observed accident victim being removed from vehicle by the "jaws of life," being placed on a back board with a neck brace, and being taken from the scene in an ambulance; and officer smelled alcohol on defendant motorist's breath); *State v. Silver*, 498 So.2d 580 (Fla. 4th DCA 1986) (holding that homicide investigator had probable cause to order compelled blood draw pursuant to Fla. Stat. § 316.1933, where he had been informed by police officer that defendant was driver of vehicle that caused accident resulting in homicide and that officer smelled alcohol on defendant's breath); *State v. Durden*, 655 So.2d 215 (Fla. 1st DCA 1995) (holding that officer's observations on the scene, that defendant's vehicle was six feet across the center line at the time of impact, that there was an open container of liquor in the vehicle and an ice chest and beer cans lying around the vehicle, and that the driver of the other vehicle was seriously injured, gave officer probable cause to order blood test of defendant under Fla. Stat. § 316.1933); and *State v. Johnson*, 695 So.2d 771 (Fla. 5th DCA 1997) (holding that trooper had probable cause to compel § 316.1933 blood test of defendant who was involved in fatal accident even though paramedics observed no impairment on defendant's part; trooper smelled alcohol on defendant's breath and noted that defendant's eyes were bloodshot, he was swaying, and he had mildly slurred speech, and another officer told trooper that defendant was driver of automobile involved in accident; defendant told trooper that he was the driver; and circumstantial evidence drawn from observations of accident scene could have supplied trooper with grounds to conclude that defendant was a major factor in causing the accident).

Defense counsel countered that the foregoing cases were inapposite, because it was Cpl. Maddox who ordered the blood draw, and at the time he ordered it he did not have the information from Trooper Wright concerning the odor of alcohol.

The trial court denied the motion, stating its reasons orally and in a written order. (Ex. B, pp. 209-211, 229-31). The trial court essentially found that the information Cpl. Maddox obtained from the scene provided probable cause to compel a blood draw. The court further determined that even if Cpl. Maddox lacked sufficient probable cause to compel the blood test, any deficiencies were overcome by Trooper Wright's observations prior to the blood draw. (*Id.*, Order Den. Mot. to Suppress, pp. 229-31).

On August 11, 2005, petitioner pleaded no contest to all counts. In exchange for his plea, the plea agreement called for a "cap" of fifteen (15) years incarceration and permitted petitioner to ask the court to depart downward from the minimum punishment under the criminal punishment code which is 13 years. (Ex. B, p. 214; Ex. C). Petitioner was adjudicated guilty and sentenced to a total term of 15 years imprisonment.

### ii.    Postconviction Proceeding

In his motion for postconviction relief, petitioner asserted defense counsel was ineffective for failing to argue that "law enforcement observed no evidence at the scene of the accident that would cause a reasonable person to believe or suspect that the Defendant was intoxicated at the time of the accident." (Ex. B, pp. 110-11). Petitioner asserted that no alcoholic beverage containers had been discovered inside or in the general area of the vehicle petitioner had been driving, and that no odor of alcohol was detected inside the vehicle or upon petitioner by any law enforcement officer at the scene. Petitioner further asserted that the State had presented no evidence that the paramedics or hospital personnel who treated him detected an odor of alcohol. Petitioner argued that the fact that Trooper Wright smelled alcohol on him was irrelevant, because the probable cause determination must be based on observations and information obtained at the time and place of the accident, not after the defendant was transported from the scene. Petitioner argued that counsel's "failure to sufficiently argue this issue" was deficient, and that had counsel sufficiently argued for suppression, including citing relevant case law, the blood test results would have been suppressed and petitioner would not have been "compelled" to enter his no contest pleas. The specific case law petitioner contended counsel should have argued included *State v. Durden*, 655 So. 2d at 216 (holding that "[p]robable cause to order a blood test exists under section 316.1933(1) if a police officer, based upon reasonably trustworthy information, has knowledge of facts and circumstances sufficient to cause a person of reasonable caution to believe that the suspect driver was under the influence of alcoholic beverages at the time of the accident and caused the death or serious bodily injury of a human being. Probable cause must be based on objective facts and circumstances, not on the officer's personal opinions or suspicions."); *State v. Kliphouse*, 771 So. 2d 16 (Fla. 4th DCA 2000) (holding that a forcible blood extraction under Florida's implied consent statute, Fla. Stat. § 316.1932(1), requires a "clear indication" or probable

cause that a driving under the influence crime has been committed); *State v. Webb*, 753 So. 2d 145 (Fla. 3rd DCA 2000) (holding that blood test results were properly suppressed where officer who ordered blood withdrawal did not testify at the suppression hearing and there was "absolutely no evidence in the record" that the officer had probable cause to believe the defendant was under the influence of an alcoholic beverage at the time of the accident; further, although the officer could have properly relied on the observations made by another officer at the scene to establish probable cause, there was no record evidence that that is what occurred, and the record evidence affirmatively reflected that the blood draw was ordered "as nothing more than a standard operating procedure in an accident involving serious bodily injuries."); and *State v. Brown*, 725 So. 2d at 441 (holding that "under the influence of alcoholic beverages" within the meaning of Fla. Stat. § 316.1933(1), means the driver's normal faculties were impaired, not simply that the driver had consumed alcohol),

The Rule 3.850 court denied relief, identifying correctly *Strickland* as the controlling legal standard for whether counsel was ineffective. (Ex. B. p. 154). The court applied *Strickland* as follows:

> In this ground Defendant asserts the evidence was not sufficient to prove he was under the influence of alcohol in order to obtain a legal blood draw pursuant to section 316.1933(1), Florida Statute. Initially, he claims there was no alcoholic beverage found either inside the vehicle or around the "general area." However, the record refutes this claim. This Court notes at the suppression hearing Corporal Maddox testified there was a beer can in the middle of the road and the indicators at the scene led him to believe the beer can came out of Defendant's vehicle. (Exhibit D, 9-10:23-2). Moreover, Defendant's own motion contradicts this allegations as he states the beer can was "several feet from the vehicle." (Defendant's Postconviction Motion, 4).

> Regardless, Defendant's argument, as it pertains to the medical staff or paramedics *not* detecting a smell of alcohol thus challenging the legality of the blood draw, is speculative at best. (emphasis added). Trooper Wright testified at the suppression hearing while at the hospital he smelled "the alcohol of a beverage" coming from the Defendant. (Exhibit D, 20:7-8). The Court determined Trooper Wright's observations of the Defendant further supported the validity of the blood draw. (Exhibit F).

(Ex. B, pp. 156-57) (referencing exhibits attached to the Order). The Rule 3.850 court's findings are amply supported by the state court record. Petitioner has put forth no "clear and convincing evidence" that the facts – as articulated by the state court – are incorrect; therefore, the state court's fact determinations are presumed

correct. Furthermore, the state court applied reasonably the *Strickland* standard to determine that petitioner failed to establish deficient performance and prejudice. The state court essentially concluded that the arguments petitioner faulted counsel for failing to put forward were without merit. Therefore, petitioner could not prevail on his ineffective assistance claim. This decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.

It must be remembered that the test is not what the best lawyers would have done or even what most good lawyers would have done. Instead, the test is whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). The state court concluded reasonably that counsel's actions met this test. As petitioner himself admits, counsel did not fail to attack the existence of probable cause to conduct the blood draw. Counsel argued emphatically that the mere existence of an unopened beer can in the road was insufficient for Cpl. Maddox to order a blood draw, and that Trooper Wright's subsequent detection of the odor of an alcoholic beverage could not be considered, and in any event did not provide the requisite probable cause. Although counsel did not cite to all of the cases petitioner says he should have, counsel argued the controlling legal principles on the issue of probable cause, and cited in his motion case law supporting suppression. The arguments petitioner faults counsel for failing to make were either unsupported by the evidence or unwarranted.

In light of the foregoing, this court cannot say that the state court unreasonably applied *Strickland* in denying relief on petitioner's ineffective assistance claim. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1), challenging the convictions and sentences in *State of Florida v. Donald Thomas Glenn Jr.* in the Circuit Court of Santa Rosa County, Florida, case no. 04-0240, be DENIED, and the clerk be directed to close the file.

At Pensacola, Florida, this 20th day of October, 2009.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).